## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTINE H. THRASH,        :
                      :

        Plaintiff,        :     Civil Action No.:    04-0634 (RMU)
                      :

     v.             :
                      :     Document No.:    10

THE LIBRARY OF CONGRESS,     :
                      :

        Defendant.    :

### MEMORANDUM  OPINION

**GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS[1] AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I.   INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff claims that the defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.*, and the Rehabilitation Act of 1973[2] ("Rehabilitation Act"), 29 U.S.C. § 794, by denying the plaintiff a promotion, refusing to transfer her and terminating her employment.  The defendant claims that it is entitled to summary judgment because there is no genuine issue as to any material fact and because it is

---

[1]    Although the defendant styled its motion as one for summary judgment, some of the defendant's challenges to the plaintiff's claims address the court's jurisdiction.  The court, therefore, construes the defendant's motion with regard to those claims as a motion to dismiss.

[2]    The plaintiff brings her disability discrimination claims under the Americans with Disabilities Act ("ADA").  The ADA, however, does not apply to federal employees. The Rehabilitation Act, 29 U.S.C. § 794, on the other hand, applies to federal employees and "expressly incorporates the standards of the ADA for claims of employment discrimination."  *Lester v. Natsios*, 290 F. Supp. 2d 11, 23 n.2 (D.D.C. 2003).  The court, therefore, will construe the plaintiff's claim as one for relief under the Rehabilitation Act.

entitled to judgment as a matter of law.  Because the plaintiff failed to exhaust her administrative

remedies as to her age discrimination claims, the court grants the defendant's motion to dismiss

those claims.  Because the plaintiff's complaint does not allege a prima facie case for her gender

and race discrimination claims, the court grants the defendant's motion for summary judgment

on those claims.  Finally, because the plaintiff cannot establish prima facie case for disability

discrimination, the court grants the defendant's motion for summary judgment as to those claims.


## II.   BACKGROUND

### A.   Factual Background

The defendant employed the plaintiff, an African American female, from 1969 through

1993, during which time she achieved a position of Senior Computer Operator.  Pl.'s Opp'n, Ex.

1 at 5, Ex. 2 at 1.  The plaintiff alleges that beginning in 1988, the defendant subjected her to

discriminatory treatment in a series of employment decisions.  Compl. ¶¶ 7-8, 11, 14-15.  In

1981, the plaintiff earned a performance evaluation of "outstanding" and subsequently, her

supervisors gave her a discretionary Quality Step Increase ("QSI"), which raised the plaintiff's

salary.  Pl.'s Opp'n ¶ 11.  In 1988, the plaintiff again received an "outstanding" in her

performance evaluation, but the defendant this time denied the plaintiff a QSI.  Pl.'s Opp'n, Ex. 1

at 2.  Instead, the defendant gave a group award of $1,800.00 to be divided among the plaintiff

and two of her supervisors.  Pl.'s Opp'n ¶ 11.  The plaintiff asserts that she did not suspect that

her failure to receive a QSI was due to discrimination until February of 1990.  Def.'s Statement

of Mat. Facts as to Which There is No Genuine Issue ("Def.'s State.") ¶ 4 (citing Pl.'s Depo. at

63).  She now claims that the decision to award her the one-time amount of $350 rather than a QSI constitutes discriminatory treatment.  Pl.'s Opp'n ¶¶ 12, 14.

On March 12, 1992, due to alleged stresses and health concerns caused by renovations of her workspace, the plaintiff requested a lateral transfer with the same pay and benefits as her previous position.  Def.'s State. ¶ 16.  On March 14, 1992, the plaintiff's doctor sent a letter to the Library of Congress Health Services Office ("HSO") setting forth the plaintiff's health concerns, stating that continuing to work in her current situation would be deleterious to her physical and mental health, and requesting that she be transferred.  Pl.'s Opp'n, Ex. 6.  Six days later, the HSO agreed with the plaintiff's doctor's assessment, although neither her doctor nor the HSO found her to be unfit for duty.  Def.'s State. ¶¶ 19-20.

Pursuant to the plaintiff's request for reassignment, the defendant relocated the plaintiff to various temporary positions at the same pay, hours and benefits while it sought a permanent position for her.  Def.'s State. ¶ 22.  On April 16, 1992, the defendant detailed the plaintiff with the defendant's National Translations Center ("NTL") where she remained until December 13, 1992.  *Id*. ¶ 23.  According to the defendant, however, the plaintiff, without requesting leave, failed to report to work from December 14 through December 20, 1992.  *Id*.  Consequently, the defendant charged the plaintiff 25.75 hours of absence without leave ("AWOL").  *Id*.  The plaintiff at one point concedes her AWOL status, but she later denies the allegation that she was ever AWOL.  Pl.'s Depo. At 147, 171.

The plaintiff returned to work on December 21, 1992, at which time the defendant gave her the option to retroactively request sick or annual leave for her absence, but the plaintiff chose neither alternative.  *Id*.  Thus, her employment record reflected that she was AWOL for this

period.  *Id*.  On March 12, 1992, the plaintiff requested a permanent transfer to the defendant's Information Technology Services ("ITS").  Pl.'s Opp'n ¶ 24.  In April 1992, the defendant informed the plaintiff that noncompetitive transfers would be difficult to achieve especially in light of the plaintiff's medical condition.  Def.'s Mot., Ex. 14.  The plaintiff now claims that the defendant discriminated against her by forcing her to continue to work during the renovations of her workplace, Compl. ¶ 7-8; Def.'s State. ¶ 16; Pl.'s Opp'n, Ex. 1 at 22, 34, 35, 95, 98, and that the defendant allegedly "perpetuated this discriminatory treatment" by rejecting the plaintiff's request to be reassigned to a different unit, Compl. ¶ 8.

On July 16, 1993, the defendant refused the plaintiff's request for permanent reassignment, citing ongoing restrictions on personnel actions such as transfers.  Def.'s State. ¶ 24.  Subsequently, the defendant informed the plaintiff that it was unable to find a temporary alternative position for which the plaintiff was qualified.  *Id.* ¶¶ 25-26.  The defendant also determined that the plaintiff's medical situation did not prevent her from performing in her original capacity.  *Id.*  Accordingly, the defendant directed the plaintiff to return to her original position beginning July 21, 1993.  *Id.*  The plaintiff, however, never returned to work.  On July 27, 1994, the defendant advised the plaintiff that it planned to remove her from government services as of August 12, 1994 because of her continued absence.  *Id*. ¶ 31.  The defendant terminated the plaintiff on August 16, 1994, and the plaintiff appealed that action on the same day.  *Id*. ¶ 32.

**B.    Procedural History**

**1.    The Plaintiff's Allegations Arising from the Defendant's Denial of Her QSI**

In February 1991, the plaintiff contacted the defendant's Dispute Resolution Center ("DRC") and informed it of her concerns regarding the denial of a QSI in 1988.  Def.'s State. ¶ 10.  The matter was referred to the Equal Employment Opportunity Commission Complaints Office ("EEOC") for processing.  *Id*. ¶ 11.  Two years later, on April 7, 1993, the plaintiff filed a discrimination charge with the EEOC regarding the same 1988 incident, identifying only race and gender as the sole bases of the alleged discrimination.  *Id*. ¶ 12.

On February 27, 1998, the EEOC, determining that the plaintiff failed to identify a person not of her race or gender who received a QSI, concluded that the plaintiff had no evidence for her allegations of discrimination and, accordingly, denied the plaintiff relief.  Def.'s State. at 1-2. The record does not indicate, and the plaintiff does not allege, that she subsequently requested a hearing, reconsideration of the decision or otherwise appealed the EEOC's Feburary 27, 1998 decision.

**2.    The Plaintiff's Allegation of Discrimination
for the Defendant's Failure to Transfer Her**

On July 22, 1993, the plaintiff filed with the EEOC two charges of discrimination associated with the defendant's denial of the plaintiff's request to transfer.  Pl.'s Opp'n ¶ 30; Def.'s Mot. at 5.  On January 27, 1998, the EEOC informed the plaintiff that it could not resolve the claims, and that she could file a formal charge of discrimination in court.  *Id*., Pl.'s Opp'n ¶ 30.  The plaintiff did so, again identifying only race and gender as the bases of discrimination. Def.'s Mot. at 6.

On June 17, 2005, the defendant filed a motion to dismiss arguing that the court lacks

jurisdiction as to the plaintiff's ADA and ADEA claims and that no material fact exists as to the

plaintiff's Title VII claims.  The court now turns to that motion.


### III.    ANALYSIS

**A.    The Court Grants the Defendant's Motion to Dismiss the Plaintiff's ADEA Claims and Denies the Defendant's Motion to Dismiss the Plaintiff's Rehabilitation Act Claims**

**1.    Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.*

*Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a

court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no

action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v.*

*Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v.*

*Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack

of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.   Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that

7

a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### 3.   The Plaintiff has Failed to Exhaust Administrative Remedies as to Her Age Discrimination Claims but has Exhausted Administrative Remedies as to her Disability Discrimination Claims

The plaintiff claims that the defendant's refusal to permanently transfer her to another department constitutes age and disability discrimination. Pl.'s Opp'n ¶¶ 29, 30. The defendant counters that none of the plaintiff's administrative filings reference allegations of either type of discrimination. Def.'s Mot. at 12. It adds that the plaintiff did not timely exhaust her administrative remedies. *Id*. The plaintiff claims that she is entitled to equitable tolling of the statute of limitations for making administrative filings. Pl.'s Opp'n ¶ 18. Assuming *arguendo* that the plaintiff is entitled to tolling, the plaintiff has nevertheless failed to exhaust her administrative remedies as to her failure to transfer for age discrimination, and accordingly, the court dismisses those claims. Because, however, the plaintiff has exhausted administrative remedies for her disability claims, the court denies the defendant's motion to dismiss those claims.

### a.   Age Discrimination Claims

The plaintiff claims that the defendant's denial of the plaintiff's transfer request was motivated by age discrimination.  Pl.'s Opp'n ¶ 27.  The defendant asserts that none of the plaintiff's administrative filings mention discrimination based on age and, therefore, the plaintiff has not exhausted her administrative remedies.  Def.'s Mot. at 12.  The defendant bears the burden of establishing by a preponderance of the evidence that the plaintiff failed to exhaust administrative procedures.  *Brown*, 777 F.2d at 13.  In support of its position, the defendant submits the plaintiff's administrative filings which demonstrate that the plaintiff identified only gender and race as the bases for her allegations of discrimination.  *Id*. at Exs. 4, 5, 7, 9, 17, 22.

Courts require plaintiffs to exhaust their administrative remedies "in order to give federal agencies an opportunity to handle matters internally whenever possible."  *Brown*, 777 F.2d at 13.  Administrative complaints, in addition, "are to be liberally construed 'since very commonly they are framed by persons unschooled in technical pleadings.'"  *Id.* (citing *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711, 727 (D.C. Cir. 1978)).  Still, "adequacy of notice is the core of Title VII's administrative exhaustion requirement," *Brown*, 777 F.2d at 14, requiring a party's charge to be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 29 C.F.R. § 1601.12(b) (2004)).

With regard to the plaintiff's age discrimination claims, the plaintiff argues that her complaints should not be barred for failure to exhaust administrative remedies because they are "reasonably related" to the claims asserted in the administrative claims.  Pl.'s Opp'n ¶ 31.  Though the plaintiff accurately states the law here, the plaintiff's circumstances do not fit the

9

legal requirement for "reasonably related' claims. *Park v. Howard Univ.*, 71 F.3d at 907 (stating that the exhaustion requirement will be deemed satisfied if the subsequent claims are reasonably related to the original claims). The plaintiff relies on cases in which courts determined claims to be "reasonably related" when they alleged subsequent but similar acts, *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973), different acts with the same discriminatory motive and in violation of the same statute, *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 741 (8th Cir. 1980), and acts of continuing discrimination, *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). The plaintiff's age discrimination claims fall into none of these categories.

The plaintiff brings her allegations of age discrimination for the first time in this case without having previously alleged age discrimination in the administrative proceedings. Although the court will "liberally construe an administrative charge for exhaustion of remedies purposes . . . 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*,[3] a claim which simply was not made.'" *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005).

The plaintiff's administrative filing states that the bases of the plaintiff's charge are "race & sex." Def.'s Mot., Ex. 17. The hand-written comments then reference the plaintiff's medical concerns. *Id*. Nowhere on the face of the administrative charge is there any reference to the plaintiff's age. Accordingly, the court determines that the defendant did not have notice of the plaintiff's charges of age discrimination for a refusal to transfer the plaintiff based on her administrative charges of race and gender discrimination. For this reason, the plaintiff failed to exhaust her administrative remedies with regard to her age discrimination charges, and the court

---

[3]     *Ex nihilo* is defined as "from nothing." BLACK'S LAW DICTIONARY (8th ed. 2004).

consequently lacks subject matter jurisdiction over these claims. *Rann v. Chao*, 346 F.3d at 194-95; *Gillet v. King*, 931 F. Supp. at 12-13.

### b.   The Plaintiff's Disability Discrimination Claims

Similarly, the plaintiff claims that the defendant's denial of her request for transfer violated the Rehabilitation Act. Pl.'s Opp'n ¶ 24. As stated, the defendant bears the burden of proving that the plaintiff failed to exhaust her administrative remedies. *Brown*, 777 F.2d at 13. In support of this position, the defendant offers a copy of the plaintiff's EEOC claim, filed on July 22, 1993. Def.'s Mot., Ex. 17. Curiously, the defendant's filing offers proof indicating that the defendant had adequate notice of the plaintiff's disability discrimination claims. In this administrative charge, the plaintiff does indeed identify race and gender as the bases of the alleged discrimination for the denial of her request for a permanent transfer. Def.'s Mot., Ex. 17. Notably, however, the plaintiff's allegations indicate in the section labeled "Nature of allegation" that she "cannot jeopardize [her] health and go against [her] physician's advice." *Id*. Mindful that courts ought to read administrative complaints with the understanding that "they are framed by persons unschooled in technical pleadings," *Brown*, 777 F.2d at 13 (citing *Shehadeh*, 595 F.2d at 727), and considering whether the agency had notice of the plaintiff's allegations, *Brown*. 777 F.2d at 14, the court determines that the defendant had sufficient notice of the plaintiff's disability discrimination claims. Accordingly, the plaintiff properly exhausted her administrative remedies as to this claim. *Brown*, 777 F.2d at 14. The court, therefore, denies the defendant's motion to dismiss this charge and proceeds to examine it as part of the defendant's motion for summary judgment.

**B.    The Court Grants the Defendant's Motion for Summary Judgment
as to the Plaintiff's Title VII and Rehabilitation Act Claims**

Having addressed the defendant's motion to dismiss, the court now turns to the

defendant's motion for summary judgment as to the plaintiff's remaining claims.  The defendant

asserts that the plaintiff cannot establish a prima facie case of race, gender or disability

discrimination and, therefore, cannot succeed at trial on the remaining claims.  The court now

turns to this motion.

**1.    Legal Standard for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine what facts are

"material," a court must look to the substantive law on which each claim rests.  *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.  *See*

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*See Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the

mere existence of a scintilla of evidence" in support of its position.  *See Anderson*, 477 U.S.

at 252.  To prevail on a motion for summary judgment, the moving party must show that the

nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *See Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999).  Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor.  *See id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### 2.    Legal Standard for Discrimination Claims

### a.    The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination under Title VII or the ADEA, a plaintiff must follow a three-part burden-shifting analysis.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  The Supreme Court explained this scheme as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination.  Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140-143 (2000).  To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [she] is a member of a protected class; (2) [she] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004).  Similarly, to establish a prima facie case of sex discrimination, the plaintiff must show that (1) the plaintiff is a member of a protected class; (2) the plaintiff was similarly situated to an employee who was not a member of the protected class; and (3) the plaintiff and the similarly situated employee were treated disparately.  *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action.  The employer's burden, however, is merely one of production.  *See Burdine*, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Id.*  If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action.  *See McDonnell Douglas*, 411 U.S. at 802-805; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).

14

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka*, 156 F.3d at 1289.

### b.   The Plaintiff Cannot Establish a Prima Facie Case of Discriminatory Denial of QSI[4] on the Basis of Gender and Race

To succeed on a motion for summary judgment in a case of employment discrimination, the defendant must show that the plaintiff cannot prove a prima facie case at trial. *See Celotex*, 477 U.S. at 322. Still, the plaintiff bears the ultimate burden to prove intentional discrimination on the part of the defendant. *Tex. Dep't of Comm. Affairs*, 450 U.S. at 252-53.

As an essential part of her prima facie case, however, the plaintiff must also demonstrate that the defendant's refusal to promote her raises an inference of discrimination, *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002),

---

[4]      The defendant claims that the plaintiff failed to exhaust her administrative remedies with regard to its refusal to award her a QSI for 1988. Def.'s Mot. to Dismiss at 9-11 ("Def.'s Mot."). The plaintiff has 20 days from a discriminatory incident to file a charge with the EEOC pursuant to LCvR 2010-3.1 § 4. Def.'s Mot. at 10. The plaintiff states that she did not suspect that race was a factor in the denial of her QSI until a discussion with her supervisor, but she does not indicate when that discussion occurred. Pl.'s Opp'n ¶ 22. In addition, the plaintiff asserts that she was not aware of her right to file an administrative charge until 1991. Pl.'s Opp'n ¶ 18. The plaintiff, however, did not file her EEOC charge until April 7, 1993. Def.'s Statement of Material Facts as to Which There is No Genuine Issue ¶ 12. Therefore, even if the plaintiff was entitled to equitable tolling of the 20-day statute of limitations until the point at which she knew she could file a charge, she exceeded tolled statute of limitations by over a year.

specifically, that "similarly situated employees" were treated differently. *Holbrook v. Reno*, 196 F.3d at 261. To demonstrate that the defendant had a discriminatory intent, the plaintiff points to the fact that in lieu of a QSI, she received a group monetary award, shared with her two male supervisors. Pl.'s Opp'n ¶ 11. The plaintiff alleges that she received only $350 as her share, rather than a full third of the $1,800 group award. *Id*. The plaintiff reasons that her disproportionate award vis-à-vis her supervisors raises an inference of discrimination. *Id*.

A disproportionate distribution of a group award is insufficient to establish proof that the defendant acted out of discriminatory animus because the plaintiff fails to identify "similarly situated" employees who were treated differently. First, one of the plaintiff's supervisors with whom she shared the award is African American. Def.'s State. ¶¶ 1-2. Therefore, no inference of race-based discrimination exists because the award was not disproportionately distributed on racial grounds. Also, the mere fact that two male employees received a higher bonus does not raise an inference of discrimination because as supervisors, they are not "similarly situated." *See Taylor v. Small*, 350 F.3d 1286, 1295 (D.C. Cir. 2003) (stating that employees with different qualifications than the plaintiff, including a supervisor, are not similarly situated for the purposes of establishing a Title VII claim).

### c. The Plaintiff Cannot Establish a Prima Facie Case for Discriminatory Working Conditions or Failure to Transfer on the Basis of Race

The plaintiff also claims that the defendant violated Title VII by requiring the plaintiff to work while her office building was being renovated. Compl. ¶ 7-8; Def.'s State. ¶ 16; Pl.'s Opp'n, Ex. 1 at 22-23. According to the plaintiff, these renovations caused "jackhammering, plaster dust, asbestos and rats" to be present in the plaintiff's work space. Pl.'s Opp'n ¶ 24.

To succeed on the race discrimination claims, the plaintiff must demonstrate the same three elements of a prima facie case as discussed *supra*. *See McDonnell Douglas*, 411 U.S. at 802-805; *Aka*, 156 F.3d at 1288.  Courts have defined "adverse personnel action in the absence of diminution of pay or benefits" to include "materially adverse consequences affecting the terms, conditions, or privileges of employment."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  Indeed, "[a]n 'employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.'" *Id.* (citing *Walker v. WMATA*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (stating that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

Specifically in regard to the denial of a request for a transfer,

> a plaintiff who is made to undertake or who is denied a lateral transfer– that is, one in which she suffers no diminution in pay or benefits-does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.  Mere idiosyncracies of personal preference are not sufficient to state an injury.

*Brown,* 199 F.3d at 457.  Because the plaintiff's discriminatory working conditions and discriminatory failure to transfer claims both require the plaintiff to demonstrate an adverse employment action, the court will address them both together.

Here, the plaintiff asserts no change in her duties or the terms of her employment.  In fact, the defendant merely required her to continue working in her existing position during the

renovations.  Compl. ¶ 7-8; Def.'s State. ¶ 16; Pl.'s Opp'n, Ex. 1 at 22-23.  The defendant,

therefore, has met its burden in establishing that, however inconvenient or unpleasant the

renovations may have been for the plaintiff, the plaintiff fails to allege that they constituted an

adverse employment action.  *See Harper v. City of Jackson Municipal Sch. Dist.*, 149 Fed. Appx.

295, 303 (5th Cir. 2005) (stating that "undesirable work assignments are not adverse employment

actions"); *Brown,* 199 F.3d at 457 (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.

1996)).  Because the plaintiff cannot establish a prima facie case of either race or gender

discrimination for working conditions, the court grants the defendant's motion for summary

judgment.

### d.   The Plaintiff Cannot Establish a Prima Facie Case of Failure to Accommodate and Wrongful Termination in Violation of the Rehabilitation Act

In assessing ADA and Rehabilitation Act claims, the court looks to the *McDonnell*

*Douglas* burden-shifting framework.  *Smith v. Dist. of Columbia*, 430 F.3d 450 (D.C. Cir. 2005)

(applying the *McDonnell Douglas* framework to ADA claims); *McGill v. Munoz*, 203 F.3d 843,

845 (D.C. Cir. 2000) (applying the *McDonnell Douglas* framework to Rehabilitation Act claims).

To succeed on this motion for summary judgment, the defendant must demonstrate that the

plaintiff cannot prove a prima facie case of disability discrimination.  To establish a prima facie

case of discrimination under the Rehabilitation Act, the plaintiff must show that he (1) is an

individual with a disability (2) who, with or without reasonable accommodation, can perform the

essential functions of the position, and (3) who suffered an adverse employment decision due to

her disability.  *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002); *LaCorte v.*

*O'Neill*, 139 F. Supp. 2d 45, 47-48 (D.D.C. 2001) (citing *Barth*, 2 F.3d at 1186).

The plaintiff alleges that the defendants failed to provide her reasonable accommodations for her mental disability as required by the Rehabilitation Act and eventually terminated her based upon disability discrimination.  Pl.'s Opp'n ¶ 35.  The defendant argues that the plaintiff cannot establish a prima facie case under the Rehabilitation Act because the plaintiff does not have a qualifying "disability."  Def.'s Mot. at 17-18.  To prove that she has a disability, the plaintiff must demonstrate that her mental distress caused by the renovations "substantially limited" one or more major life activities.  42 U.S.C. § 12102(2).  For the impairment to substantially limit major life activities, "[t]he impairment's impact must . . . also be permanent or long term."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002); *see also* 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii) (2001).

Here, the plaintiff alleges that due to the distress she suffered by the renovations, she was unable to prepare meals for or otherwise care for her teenage daughter.  Pl.'s Opp'n. ¶ 27.  The plaintiff sheds more light on her condition by offering her doctor's letter which states her diagnosis as "adjustment disorder with mixed emotional features."  Pl.'s Opp'n, Ex. 6.  The letter details the plaintiff's symptoms of distress and specifically requests a transfer for the plaintiff.  *Id.*  The plaintiff's symptoms include crying without provocation and feelings of anxiety and depression.  *Id.*  The defendant concedes that its HSO agreed with the recommendation to transfer the plaintiff to a less stressful environment.  Def.'s State. ¶¶ 19-20.

Despite these letters stating that the plaintiff suffered from anxiety and recommending a transfer, the plaintiff alleges no permanent or long-term disability.  Although an adjustment disorder likely qualifies as an "impairment" for purposes of the Rehabilitation Act, the plaintiff still must prove that the impairment was permanent or long-term and substantially limited a

major life activity.  *Toyota*, 534 U.S. at 195 (stating that merely having an impairment does not make a plaintiff disabled for the purposes of the ADA).  In her deposition, the plaintiff stated that she was not able to cook for her daughter "right away" after she got home.  Pl.'s Depo. at 154. She said that she would have to "lay in bed for a while" and would eventually "come out of it." *Id*.  When asked specifically how she was disabled, she replied, "I was not able to function."  *Id*. Unfortunately, however, the plaintiff's own testimony precludes her condition from being a "disability" as required for relief under the Rehabilitation Act.  The plaintiff states that she was able to feed herself, tie her shoes, drive her car and shop.  Def.'s Mot. at 19.  Being able to perform these activities is anathema to having a disability.  45 C.F.R. § 84.3(j)(2)(ii) (1985) (defining "major life activities" as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

Moreover, for the court to consider working to be a "major life activity" which was "substantially limited," the plaintiff must demonstrate that she was unable to perform a broad range of jobs.  *Duncan v. Wash. Metropolitan Area Transit Authority,* 240 F.3d 1110, 1114 (D.C. Cir. 2001); *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999) (stating that "the inability to perform a single, particular job" is insufficient to establish a substantial impairment to the plaintiff's major life activity of working).  The defendant has demonstrated, and the plaintiff does not dispute, that it proceeded to detail the plaintiff to various positions with the same pay and benefits while it allegedly searched for a suitable permanent position to which the plaintiff could transfer.  Def.'s State. ¶ 22.  The defendant also argues that the plaintiff was only unable to work at her specific workstation during the renovations.  Def.'s Reply at 10.  The plaintiff does not allege that she was unable to perform the various jobs to which she was detailed.  In fact, the

plaintiff states that "the Defendant reassigned the Plaintiff, and Plaintiff could perform her job functions with such an accommodation." Pl.'s Opp'n ¶ 34.

Therefore, because the defendant alleges that the plaintiff was not suffering from a disability and the plaintiff's own statements indicate that she was not limited in a major life activity, no genuine issue of material fact exists. The defendant has thereby succeeded to establish that the plaintiff did not suffer a disability as required by the statute and has also succeeded to prove that the plaintiff will be unable to establish a prima facie case of disability discrimination at trial.

Finally, the plaintiff alleges that she is entitled to relief under the Rehabilitation Act because the defendant perceived her to be disabled and accordingly discriminated against her. Pl.'s Opp'n ¶ 36; 42 U.S.C. § 12102(2)(C) (stating that the term "disability" includes being regarded as having an impairment). Similar to the previous claim and pursuant to the statute, the plaintiff must establish a prima facie case which includes that the defendant believed her to be disabled. *McGill*, 203 F.3d at 845 (applying the *McDonnell Douglas* framework to Rehabilitation Act claims and requiring the plaintiff to establish a prima facie case of discrimination). Because the defendant detailed her to other positions, however, the plaintiff cannot establish that the defendant believed her to be disqualified for a broad range of jobs. Def.'s Reply at 10 (stating that the plaintiff was only unable to work at her original position during the renovations); *Muller*, 187 F.3d at 312. In fact, the CSO letter also states that the defendant did not consider the plaintiff unfit for her original position. Def.'s State. ¶¶ 19-20. As a result, the plaintiff cannot prove that the defendant perceived her to be disabled. Because the

defendant has proven that the plaintiff cannot establish a prima facie case for either of her

Rehabilitation Act claims, the court grants the defendant's motion for summary judgment.


## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the

plaintiff's ADEA claims.  The court grants the defendant's motion for summary judgment as to

the plaintiff's Title VII and Rehabilitation Act claims.  An order directing the parties in a manner

consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th

day of February 2006.




RICARDO M. URBINA
United States District Judge